IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

MARK ANTHONY FRIPP,                )     CIVIL ACTION NO. 9:14-0310-MGL-BM
                                   )
                                   )
                 Plaintiff,        )
                                   )
v.                                 )     **REPORT AND RECOMMENDATION**
                                   )
CAROLYN W. COLVIN,                 )
ACTING COMMISSIONER OF SOCIAL      )
SECURITY ADMINISTRATION,           )
                                   )
                 Defendant.        )
_____)

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on March 21, 2011 (protective

filing date), alleging disability as of December 9, 2010,[1] due to lumbar disk displacement, gout,

diabetes, acid reflux, mild heart attack, and high blood pressure. (R.pp. 183, 219, 221). Plaintiff's

claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before

an Administrative Law Judge (ALJ), which was held on October 9, 2012 (R.pp. 25-59). ALJ Thomas

G. Henderson thereafter denied Plaintiff's claim in a decision issued October 26, 2012 (R.pp. 9-19).

---

[1] Plaintiff actually stopped working in September 2009. He previously filed a claim for DIB which was denied by Administrative Law Judge Augustus C. Martin on December 8, 2010, a decision that was upheld by the Appeals Council. (See R.pp. 29, 63-74).



The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner.  (R.pp. 1-3).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits.  The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner.  Laws, 368 F.2d at 642.  "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



disagree with such decision as long as it is supported by substantial evidence." <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### <u>Discussion</u>

A review of the record shows that Plaintiff, who was forty-two (42) years old when he alleges he became totally disabled, has a limited (tenth grade) education with past relevant work experience as a product assembler. (R.pp. 18, 183, 223). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of status post lumbar microdiskectomy, gout, and obesity, he nevertheless retained the residual functional capacity (RFC) to perform sedentary[3] work requiring only occasional postural activities; only occasional use of foot controls; no climbing, kneeling, or crawling; a need to avoid workplace hazards; and the need for a sit/stand option with the ability to change position every 45 minutes to 1 hour. (R.pp. 11, 13). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (R.p. 17).

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. § 404.1521(a); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142 (1987).

[3]Sedentary work is defined as lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).



However, after obtaining testimony from a vocational expert, he found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with his limitations, and was therefore not disabled during the period at issue.  (R.pp. 18-19).

Plaintiff asserts that, in reaching his decision, the ALJ erred because he failed to properly analyze the opinions of the treating and evaluating physicians, and failed to properly evaluate whether Plaintiff's condition met or equaled the criteria of Listing 1.04.[4]  However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.  Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

### Medical Records

Plaintiff's medical records show that he underwent a right sided L4-5 and right sided L5-S1 microlumbar diskectomy on September 18, 2009.  (See R.pp. 380).[5]  On December 29, 2009, Plaintiff underwent testing with Dr. Norman Bettle of Coastal Neurology regarding Plaintiff's complaints of right outer foreleg numbness radiating into his dorsal foot.  It was noted that Plaintiff was status post L4-S1 fusion, and that he had had diabetes for one to two years. Testing revealed mild sensory-motor polyneuropathy in Plaintiff's legs (consistent with a diabetic polyneuropathy), no

---

[4]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.

[5]The surgery was performed by Dr. Jeffery Reuben, an orthopedist with Reuben Spine Specialists.  (See R.pp. 380-381, see also R.p. 68).

4



evidence of right peroneal neuropathy at the fibular head, "subtle" evidence of chronic right L5 motor radiculopathy with no evidence of renewed injury in the recent past, and no evidence of right L4 or S1 motor radiculopathy. (R.pp. 319-321). Plaintiff then had an MRI of his lumbar spine performed on January 25, 2010, which revealed:

> Extensive postsurgical enhancement involving the right posterior paraspinal musculature at L5 extending through laminectomy defect at L5 and at L4 to involve the right lateral epidural space, lateral recess, and foramina on the right at L4-L5 and L5-S1. Exiting nerve roots surrounded by enhancing granulation tissue, but there is no nonenhancing soft tissue density to suggest recurrent or residual disk protrusion. Above the operated sites, no focal abnormality identified. Degenerative or posttraumatic change involves the posterior superior corner of the L5 vertebral body as discussed. Findings reflect extensive postsurgical granulation tissue/fibrosis, but no residual or recurrent disk protrusion.

(R.pp. 329-330).

Plaintiff was seen at Beaufort Memorial Hospital on February 12, 2010 for complaints of left foot pain, which was diagnosed as gout. Plaintiff exhibited limited active and passive range of motion (due to complaints of pain) in his left first toe, and would only bear weight with assistance (used a cane). However, on examination it was noted that Plaintiff had no spinal or costovertebral tenderness, he had full range of motion, 5/5 [full] motor strength in all extremities, and no evidence of decreased range of motion in his extremities. All of his joints appeared normal with full range of motion. (R.pp. 326-328).

On February 23, 2010, Plaintiff visited Nurse Practitioner (NP) Jennifer Martin at Lowcountry Medical Group (Lowcountry) for treatment of the gout in his left big toe. A neuro/psychiatric examination at that time was negative for gait disturbance, and the only musculoskeletal note concerned Plaintiff's left big toe ("L GREAT MCP JOINT TTP WITH MILD ERYTHEMA"). (R.pp. 354-356). On June 16, 2010, Plaintiff was evaluated by Dr. David V. Rhodes



of Lowcountry for cardiac clearance so that Plaintiff could undergo a Functional Capacity Evaluation (FCE) with Dr. Reuben, and a Myocardial Perfusion Imaging (MPI) Study was ordered. (R.pp. 352-353). On June 18, 2010, Dr. Jonathan Gregory performed an MPI Study which revealed that Plaintiff's right ventricle appeared normal on stress, his left ventricle was not dilated with stress, the left ventricular ejection fraction was 61%, pre-stress images were normal, post-stress images showed a "very slight" posterior lateral area of apparent diminished uptake which might represent stress-induced ischemia (but it was in the area of diaphragmatic attenuation), and Plaintiff's regional wall motion was normal. (R.p. 351).

On June 23, 2010, Plaintiff had a routine follow up visit with Dr. Rhodes at Lowcountry, who noted that Plaintiff had controlled diabetes without mention of complications, controlled hypertension, and chronic lumbago with chronic right leg pain. (R.pp. 348-350). Dr. Rhodes again noted that Plaintiff had diabetes without mention of complications and hypertension with fair control on September 28, 2010. Plaintiff walked with a cane, was assessed with lumbago, and was described as being "still in pain and unable to work." (R.pp. 345-347). Thereafter, on November 11, 2010 Dr. Reuben completed a statement for an insurance company in which he stated that Plaintiff's diagnoses were lumbar disc displacement; neuritis; right L5-S1 laminectomy with foraminotomy, with diskectomy, with decompression of spinal canal and nerve root; and excision of herniated disc. Dr. Reuben also checked a box on the form indicating Plaintiff would never be able to return to work. (R.pp. 390-391).

As previously noted, however, and notwithstanding Dr. Rueben's November 11, 2010 opinion, Plaintiff has already been found not to be disabled through December 8, 2010, a decision that is binding on this Court. See (R.p. 29, 63, 74); see also Lively v. Secretary of Health and Human



<u>Services</u>, 820 F.2d 1391, 1392 (4th Cir. 1987)[Principles of <u>res judicata</u> apply in social security disability cases]; <u>Fair v. Bowen</u>, 885 F.2d 597, 600 (9th Cir. 1989)[The doctrine of <u>res judicata</u> precludes a finding of disability prior to the date of denial of a claimant's previous application]. Therefore, in order to obtain DIB, Plaintiff must show that his condition substantially worsened after December 8, 2010. <u>Orrick v Sullivan</u>, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

On January 4, 2011, Plaintiff was treated by Dr. Rhodes at Lowcountry for a routine follow up and for complaints of gout. It was noted that Plaintiff's hypertension was controlled, there was no mention of diabetes complications, a review of Plaintiff's systems was all negative except for gout in Plaintiff's left great toe, and Plaintiff's physical examination was unremarkable. (R.pp. 342-344).

On January 28, 2011, Dr. Reuben noted that Plaintiff was trying to get disability, but that "[u]nfortunately, he is having a hard time." Plaintiff reported he had progressive low back and right lower extremity pain, diabetes, high blood pressure, and gout. Plaintiff commented his combination of problems made it unsafe and hard to drive a vehicle such that he did not drive on a regular basis. Plaintiff told Dr. Reuben that he could only stand for two to three minutes without pain, could walk less than a block without pain, could sit for only ten minutes without pain, took narcotics on a regular basis, and could not wear closed shoes due to gout. Plaintiff felt that the combination of his complaints caused him to be unemployable, even though it was noted that he had



undergone a "functional capacity evaluation which state[d] that he could work [at] the light[6] physical demand level." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints].

A physical examination at that time revealed that Plaintiff was wearing open toe shoes, had some swelling bilaterally, had some grade 4 weakness of his right extensor hallucis longus (EHL) and right anterior tibia, he had moderate decreased range of motion of his lumbar spine, was using a cane, and had a right antalgic gait. Plaintiff said that he did not believe the FCE adequately represented his current symptomatology, and based on the standing, walking, sitting, and driving restrictions reported by Plaintiff and his stated around the clock narcotic use, Dr. Reuben felt that Plaintiff was unemployable. Dr. Reuben wrote: "I am hoping that they will reconsider [Plaintiff's] disability claim and given the abovementioned information will allow [Plaintiff] to receive disability. I do feel that given his spinal condition as well as his multiple medical conditions that this is certainly very reasonable." (R.pp. 380).

Dr. Rhodes saw Plaintiff again on March 1, 2011, for complaints of earaches. Plaintiff's diabetes was noted to be under fair control without mention of complications, and he was assessed with chronic lumbago. Although on physical examination Plaintiff was found to be well nourished, well developed, and in no acute distress, with no significant abnormalities noted, Dr. Rhodes wrote: "-no better, he is unable to work." (R.pp. 339-341).

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



Dr. Mary Lang, a state agency physician, completed a physical RFC assessment for the Plaintiff on May 3, 2011 after review of Plaintiff's medical records, and opined that Plaintiff could occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk at least two hours in an eight-hour workday; could sit about six hours in an eight hour day; was limited to only occasional pushing and pulling of foot controls with his right lower extremity; could only occasionally climb, balance, stoop, and crouch; could never kneel or crawl; and should avoid concentrated exposure to hazards based on his chronic use of narcotics for pain. (R.pp. 357-364). A second unsigned, undated assessment was the same as Dr. Lang's with the exception of limitations of never (rather than occasionally) climbing ladders, ropes, and scaffolds; occasionally (rather than never) kneeling; and avoiding all exposure (rather than avoiding concentrated exposure) to hazards. (R.pp. 373-375). The RFC assigned by the ALJ is consistent with these findings and opinions. (R.p. 13). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

On April 5, 2011, Dr. Rhodes treated Plaintiff for earaches in both ears. Review of systems was negative, including for gait disturbance, although Plaintiff complained of chronic back pain and had a "flare with gout in his toe." Physical examination was normal, including with respect to Plaintiff's extremities, which were noted to have no edema or cyanosis. (R.pp. 336-338). On July 5, 2011, Dr. Rhodes saw Plaintiff for routine follow up care, where again his review of systems and physical examination were essentially normal. (R.pp. 386-388). On October 12, 2011, Dr. Rhodes noted that Plaintiff's diabetes and hypertension were controlled, straight leg raising was positive on the right, and Plaintiff's extremities appeared to be normal. There was no mention of gout. (R.pp.



383-385). Plaintiff was consistently noted in these reports to be well nourished, well developed, and in no acute distress.

Upon referral from Dr. Rhodes (R.p. 396), Plaintiff underwent a consultation with Physician's Assistant Megan E. Fulton and Dr. Raymond Turner in the Neurosurgery Department of the Medical University of South Carolina (MUSC) on October 25, 2011. Plaintiff's chief complaint was listed as being back and right leg pain. Review of systems was essentially normal, and Plaintiff was found to have no weakness or numbness neurologically as well as no other numbness or paresthesias. On physical examination Plaintiff's sensory and vascular examinations were normal, and his musculoskeletal examination was noted to be within normal limits except for 4/5 (slightly reduced) strength in his right leg. Outside imaging from July 2009 and October 2010 (both prior to Plaintiff having previously been found not to be disabled) was reviewed and noted to reveal lumbar degenerative disc disease at L4-5, and L5-S1, and lumbar disk protrusion and stenosis greater on the right side than the left. The MUSC providers opined that, based on Plaintiff's previous surgery, it was "reasonable to proceed with a TLIF [transforaminal lumbar interbody fusion] at these [L4-5, 5-1] levels." (R.pp. 393-395).

Plaintiff was thereafter seen by Dr. Rhodes on March 6, 2012 for a routine follow-up. Physical examination revealed a normal musculature, no skeletal tenderness or joint deformity, and normal appearing extremities with no edema or cyanosis. Plaintiff's pain management routine was changed, he was given Duragesic patches, and was directed to use Percocet only for breakthrough pain. (R.pp. 408-410).

On June 5, 2012, NP Jennifer Martin at Lowcountry saw Plaintiff for follow up care of diabetes and hypertension (both of which were noted to be stable) and back pain. Plaintiff reported



that he previously used Duragesic patches, but was currently taking Percocet and Lortab. NP Martin said that Lowcountry could no longer treat Plaintiff's chronic pain, directed Plaintiff to stop using Lortab (as he should not take it as the same time as Percocet), and changed Plaintiff's Percocet prescription to Oxycodone. (R.pp. 403-407).

Plaintiff was then seen at the Coastal Empire Mental Health Clinic in Beaufort on June 27, 2012. Plaintiff reported that he was frustrated due to continually being denied disability and not having any money for his medications. He reported irritability, sadness, crying, no interest/motivation, and difficulties falling and staying asleep. Plaintiff was referred to a service to help him get his prescription Lyrica, was diagnosed with a Mental Disorder NOS due to multiple medical issues, and was discharged to the care of his family doctor. (R.p. 397).

On July 23, 2012, Plaintiff reported to NP Martin at Lowcountry that he had opted not to proceed with surgery because a second opinion from MUSC gave him only a fifty percent chance of improvement with a second lumbar surgery. Plaintiff reported he was unable to work due to chronic right-sided weakness and that he had been disabled since his initial surgery in September 2009 (notwithstanding the finding by the Social Security Administration on December 8, 2010 that he was *not* disabled). Plaintiff was assessed with chronic lumbago and referred again to pain management. (R.pp. 400-402).

## I.

### (Treating Physician Opinion)

Plaintiff's first assertion of error is that the ALJ improperly disregarded Dr. Reuben's November 2010 opinion that Plaintiff would never be able to return to work , and Dr. Reuben's January 2011 opinion that disability "is certainly very reasonable." (R.pp. 380, 390). He argues that



the ALJ erred by stating in his decision that "the opinion of Dr. Rubeun [sic] that the claimant was capable of light work is given appropriate weight[,]" (R.p. 16), since Dr. Reuben did not opine that Plaintiff was capable of light work. Additionally, Plaintiff argues that the decision of the ALJ to give little weight to Dr. Reuben's general opinion that Plaintiff was unemployable is flawed because there are objective findings in the record of chronic right L5 motor radiculopathy, MRI evidence of exiting nerve roots surrounded by enhancing granulation tissue, bilateral swelling, grade 4 weakness of Plaintiff's right EHL and right anterior tibia, decreased range of motion, a right antalgic gait, positive straight leg raise test on the right, 4/5 right leg strength, and recurrent disc protrusion and stenosis (right greater than left), which Plaintiff contends support his claim of disability. Finally, Plaintiff also criticizes the ALJ's discounting of Dr. Reuben's opinion due to Dr. Reuben saying Plaintiff only needed to be seen on an as-needed basis, arguing that this was because there was nothing else Dr. Reuben could do for the Plaintiff, not because Plaintiff was doing well.

Plaintiff is correct that, ordinarily, treating physicians' opinions are accorded great weight. See Craig v. Chater, 76 F.3d at 590 (4th Cir. 1996)[noting importance of treating physician opinions]. Here, however, the ALJ gave little weight to Dr. Reuben's opinion that Plaintiff was totally disabled, finding that the objective material evidence of record did not support that opinion, as well as because whether Plaintiff was disabled was a decision reserved to the Commissioner. (R.pp. 14, 16). The undersigned can find no reversible error in these findings. Craig, 76 F.3d at 89-590 (4th Cir. 1996)[rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ];



Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

      With respect to Plaintiff's argument that the ALJ made an incorrect finding concerning what Dr. Reuben believed, an error that Plaintiff asserts taints the rest of his RFC analysis and requires remand, Plaintiff cites to the ALJ's statement in his decision that Dr. Reuben's opinion "that the [Plaintiff] was capable of light work is given appropriate weight: however, I have elected to allow the claimant the benefit of the doubt with respect to his status post lumbar microdiskectomy, gout and obesity, and limit him to a range of sedentary work." (R.p. 16). Although Plaintiff is correct that Dr. Reuben, in his January 2011 opinion, did not himself state that Plaintiff was capable of light work, Dr. Reuben did write that "[o]nce again, [Plaintiff] did have a Functional Capacity Evaluation which states that he could work in the light physical demand level." (R.p. 380). What the ALJ appears to be referencing in his decision is this statement by Dr. Reuben that Plaintiff's FCE showed he had the ability to perform light work. While poorly worded, the ALJ's lack of artfulness in setting forth this finding is not a basis to overturn the decision based on the facts of this case in light of the fact that the ALJ clearly acknowledged Dr. Reuben's opinion that Plaintiff was unemployable, and then discounted that opinion based on the other evidence of record (as discussed below), not because of any finding that Dr. Reuben had opined that Plaintiff could perform light work. (R.p. 14). Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ["a deficiency in opinion-writing is not a sufficient reason



for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."]; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case"], quoting <u>Benskin v. Bowen</u>, 830 F.2d 878, 883 (8th Cir. 1987); <u>see also</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; <u>Davis v. Astrue</u>, No. 07–231, 2008 WL 540899, at *3 (D.S.C. Feb. 22, 2008) [recognizing harmless error analysis].

The ALJ acknowledged that Dr. Reuben had opined that Plaintiff was unemployable, and appropriately gave that opinion little weight because there were few objective findings to support this opinion, Plaintiff's examinations were generally normal, and Dr. Reuben reported that Plaintiff needed to be seen only as needed. (R.p. 16). <u>See</u> <u>Krogmeier</u>, 294 F.3d at 1023 ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; <u>Craig</u>, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; <u>see also</u> <u>Burch v. Apfel</u>, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]. Contrary to Plaintiff's argument, there is substantial evidence to support the ALJ's decision to discount Dr. Reuben's assessment. Dr. Reuben only examined Plaintiff once (January 2011) during the time period at issue, (Plaintiff did not return to him thereafter), and there is no indication that Dr. Reuben's objective findings on that date (some swelling bilaterally, "some" grade

14



4 weakness of his right EHL and right anterior tibia, "moderate" decreased range of motion of his lumbar spine, use of a cane, and right antalgic gait) represented either a significant worsening of Plaintiff condition since December 8, 2010, or would have prevented Plaintiff from performing the reduced range of sedentary work as found by the ALJ. <u>Orrick</u>, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability]; <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1186 (8[h] Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; <u>Blalock</u>, 483 F.2d at 775 [it is the claimant who bears the burden of proving his disability].

Plaintiff also appears to argue that the MUSC evaluation in October 2011 showed objective evidence that Plaintiff would be unable to perform the reduced range of sedentary work as found by the ALJ. That evaluation, however, reached conclusions based on a review of Plaintiff's July 2009 and January 2010 MRIs. Of note, the July 2009 MRI[7] was performed *before* Plaintiff had even had his September 2009 surgery, while the results of the January 2010 MRI specifically provide that that there was "no nonenhancing soft tissue density at the disk level to suggest a residual or recurrent disk protrusion" and the impression indicated "no residual or recurrent disk protrusion." (R.pp. 329-330).[8] Further, the MUSC providers noted that Plaintiff's sensory and vascular examinations were normal, and that his musculoskeletal examination was normal except for

---

[7]In his decision on Plaintiff's prior claim, ALJ Martin wrote that "[a] July 2009 MRI revealed spondylosis at L4-5 and L5-S1 as well as mild central canal stenosis at L4-5 with moderate to severe foraminal narrowing. A central disc protrusion was also observed at L5-S1, predominantly on the right, contracting the transiting right S1 nerve root." (R.p. 68).

[8]Significantly, both of these MRI's were also conducted *before* Plaintiff's previous finding of non-disability, and were considered as part of that previous application. (R.p. 68). <u>See</u> <u>also</u> <u>Orrick</u>, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].



decreased (4/5) strength in his right leg. (R.p. 394). The ALJ's RFC specifically incorporated postural limitations to accommodate strength limitations. (R.p. 13).

Dr. Reuben's opinion was also based in part on Plaintiff's self reports as to his combination of problems, yet the record reveals that providers at Lowcountry noted that Plaintiff's hypertension and diabetes were controlled without complications, that he suffered from only occasional flare-ups of gout, and although Plaintiff reported back pain and alleged that he could not work due to his back condition, they made very few physical findings concerning Plaintiff's back condition. (See R.pp. 326-328, 336-344, 383-388, 403-410). See also Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]. Indeed, in March 2012 (over one year after Plaintiff's alleged date of onset), Dr. Rhodes noted that Plaintiff had normal musculature, no skeletal tenderness, no joint deformity, and normal appearing extremities. (R.p. 409). Cf. Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; see also Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

Dr. Reuben stated that he believed Plaintiff and, based on Plaintiff's own reports, found that Plaintiff was unemployable. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely



credible to the extent they were inconsistent with an RFC for a reduced range of sedentary work (as found by the ALJ). (R.p. 15). See also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]. Plaintiff has not challenged the ALJ's credibility finding (other than to ask for a reevaluation of his credibility if the case is remanded), which is supported by substantial evidence including the medical record, Plaintiff's activities of daily living, and his failure to seek additional treatment including a recommendation that he go to a pain management provider (R.pp. 15-16). See Mickles v. Shalala, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d at 595 ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."].

Additionally, the ALJ's discounting of Dr. Reuben's opinion of unemployability is supported by the opinions of the state agency physicians, who opined that Plaintiff could perform a reduced range of sedentary work. (R.pp. 357-364, 373-375). See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005)[ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004)[disagreeing with argument that ALJ improperly gave more weight to RFC assessments of non-examining state agency physicians over those of examining physicians]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the



nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."]. The ALJ found that the state agency physician opinions were entitled to significant weight as they were supported by the objective medical evidence of record. (R.p. 16). Cf. Ponder v. Colvin, 770 F.3d 1190, 1195 (8th Cir. 2014) [noting that opinions from state agency consultants may be entitled to even greater weight than the opinions of treating or examining sources]. The ALJ also properly discounted Dr. Reuben's opinion that Plaintiff was "unemployable" because "the final responsibility for deciding whether a claimant is disabled is a determination reserved for the Commissioner..." (R.p. 16). See Castellano, 26 F.3d at 1029 [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"; 20 C.F.R. § 404.1527(d) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].

After review of the decision and the evidence in this case, the undersigned finds that the ALJ's conclusions are supported by substantial evidence in the case record, and that Plaintiff has failed to provide a basis for overturning the ALJ's decision consistent with this standard of review. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008) [Noting that the substantial evidence standard requires even less that a preponderance of the evidence]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is 'substantial evidence']; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; see also Guthrie v. Astrue,



18

No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), <u>adopted by</u>, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]. This argument is therefore without merit.

**II.**

**(Listing 1.04A)**

Plaintiff also contends that the ALJ erred in failing to properly evaluate whether his condition met or equaled the criteria of Listing 1.04A.[9] The Listing at § 1.04A requires a claimant to show:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A.

Plaintiff claims that the ALJ did not consider Section 1.04, and that the medical record shows the presence of elements to meet Listing 1.04A including neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, and positive straight-leg raising. However, contrary to

---

[9]Although Plaintiff argues that he met or equaled the Listing at 1.04, he only addresses Listing 1.04A and has not made any argument that he met any other subpart of 1.04. <u>See</u> Plaintiff's Brief, ECF No. 12 at 22-23. Plaintiff has presented no evidence of spinal arachnoiditis to show that he met or equaled Listing 1.04B, and he has not shown lumbar spinal stenosis resulting in pseudoclaudication with the inability to ambulate effective as needed to show that he met or equaled Listing 1.04C.



Plaintiff's argument, the ALJ specifically considered whether Plaintiff met any part of Listing 1.04, and found that he did not because:

> there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising test; or spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dyesthesia, resulting in the need for changes in position or posture more than once every two hours; or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in ability to ambulate effectively, as defined in 1.00B2b.

(R.p. 12.).

Although Plaintiff contends that the ALJ should have gone into more detail in this section, a review of the decision shows that he not only discussed these findings in the Listing section of the decision, but also supplemented his discussion of the medical evidence relating to these findings later in his decision. Therefore, even assuming the ALJ's discussion of this Listing in the listings section of the decision was not sufficient [which the undersigned does not find], remand is not required "for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." Fischer–Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005); see also Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ["reversal is not required when the alleged error clearly had no bearing on the . . . substance of the decision reached."]; Mickles v. Shalala, 29 F.3d at 921 [finding alleged error harmless when the ALJ would have reached the same result notwithstanding purported error in his analysis]; Davis, 2008 WL 540899, at *3 [recognizing harmless error analysis].

In the RFC section of his decision, the ALJ correctly noted that although Plaintiff's January 2010 MRI revealed extensive postsurgical granulation tissue/fibrosis, there was no indication



of residual or recurrent disk protrusion.  (R.p. 14).  He further noted that Plaintiff had no spinal

tenderness or costovertebral tenderness, he had full range of motion, a normal gait, 5/5 strength, and

normal motor and sensory function in February 2010; that Dr. Rhodes noted no gait disturbance or

musculoskeletal or neurological abnormalities in July 2011; a review of symptoms showed no back

or lower extremity complaints, although straight leg raising was positive in October 2011; Plaintiff's

MUSC examination was unremarkable except for diminished strength (4/5) in Plaintiff's right leg

in October 2011; that Plaintiff's musculature was normal and there was no spinal tenderness in March

2012; and that no musculoskeletal or neurological abnormalities were noted in July 2012.  (R.pp. 14-

15).  Additionally, the ALJ noted that Plaintiff had no muscular atrophy, strength deficits, circulatory

compromise, neurological deficits, muscle spasms, or change in weight indicating long standing,

severe or intense pain, and/ or physical inactivity.  (R.p. 15).

　　　　　Plaintiff, citing Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), argues that he does

not have to show that each symptom in Listing 1.04A was present at precisely the same time.

However, a review of the record nonetheless indicates that Plaintiff fails to show that he met or

equaled all of the requirements of this Listing.  See Sullivan v. Zebley, 493 U.S. at 530 ["For a

claimant to show that his impairment matches a Listing, he must show that it meets *all* of the

specified criteria.  An impairment that manifests only some of those criteria, no matter how severely,

does not qualify."].  Plaintiff only had positive straight leg raise testing on one occasion, and even

if one positive incident was sufficient to meet that prong of Listing 1.04A, there is no indication that

straight leg raise testing was positive both sitting and supine (the treatment note merely provides

"+SLR ON RIGHT" - R.p. 384).  Further, Plaintiff fails to show motor loss accompanied by sensory

or reflex loss, as during the relevant time period there is simply no indication of sensory or reflex



loss. Additionally, while Plaintiff appears to argue that he has shown motor loss based on the findings of the October 2011 MUSC examination, although there is a notation that Plaintiff had decreased right leg strength ("Right Leg 4/5"), his sensory findings were normal and there is no indication of any reflex loss. (R.p. 394). Further, as noted by the Commissioner, Plaintiff himself appears to admit he does not meet the Listing, stating he has shown "times" when elements are present and that medical records contain support that the Listing "could be met." Plaintiff's Brief, ECF No. 12 at 22-23.

Hence, no error is presented in the ALJ's consideration of Plaintiff's impairments in conjunction with the Listings. Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Trenary, 898 F.2d at 1364 [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment]. Therefore, this argument is without merit. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"]. This claim is without merit.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this



Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

January 28, 2015
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

