

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| MARK ANTHONY FRIPP, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 9:14-0310-MGL-BM |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| Defendant. | § | |

### ORDER ADOPTING THE REPORT AND RECOMMENDATION AND AFFIRMING DEFENDANT'S FINAL DECISION DENYING BENEFITS

This is a Social Security appeal in which Plaintiff seeks judicial review of the final decision of Defendant denying Plaintiff's claim for Disability Insurance Benefits (DIB).  *See* 42 U.S.C. § 405(g).  The parties are represented by excellent counsel.  The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting to the Court that Defendant's final decision denying benefits be affirmed.  The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on January 28, 2015, Plaintiff filed his objections on February 17, 2015, and Defendant filed her response to Plaintiff's objections on February 26, 2015. The Court has carefully considered the objections, but finds them to be without merit. Therefore, it will enter judgment accordingly.

Plaintiff alleges that his disability commenced on December 10, 2010. The Social Security Administration denied his claim, both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) after which the ALJ issued a decision on October 26, 2012, finding that Plaintiff was not disabled under the Act. The Appeals Council declined review. Plaintiff thereafter filed this action for judicial review.

The Agency has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from returning to her past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

It is Plaintiff's duty to both produce evidence and prove that she is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). And, it is the duty of the ALJ, not this Court, to make findings of fact and to resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Under the substantial evidence standard . . . , [the Court] must view the entire record as a whole. Additionally, the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts.

2

An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).

Under 28 U.S.C. § 636(b)(1), a district court is required to conduct a de novo review of those portions of the Magistrate Judge's Report to which a specific objection has been made. The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see* Fed. R. Civ. P. 72(b).

Thus, the Court will address each specific objection to the Report in turn. As provided above, however, the Court need not–and will not–address any of Plaintiff's arguments that fail to point the Court to alleged specific errors that the Magistrate Judge made in the Report.

First, Plaintiff argues that the Magistrate Judge erred in his determination "that the ALJ's decision was properly based on Dr. Reuben's opinion that Plaintiff was unemployable and [that] the ALJ properly discounted that opinion based on other evidence of record[.] The Magistrate Judge stated that the ALJ properly cited that examinations were generally normal and that Plaintiff needed to be seen only as needed[.]" Plaintiff's Objections 1–2 (citations omitted). According to Plaintiff, "the ALJ fails to explain how swelling, weakness, decreased range of motion of the lumbar spine, use of a cane and right antalgic gait can be described as generally normal examination findings. [']Judicial review of an administrative decision is impossible without adequate explanation of that decision by the [ALJ].'" *Id*. at 2 (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983)). The Court is unconvinced.

3

An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig*, 76 F.3d at 590 (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight").

Of course, a medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(d)(4) (1998).

Plaintiff saw Dr. Jeffery M. Reuben, a spine specialist, on January 28, 2011. A.R. 380. In his treatment notes, Dr. Reuben wrote "that given [Plaintiff's] restrictions on standing, walking, sitting, and driving as well as his around the clock narcotic use[,] . . . [Plaintiff] is unemployable." *Id*. Notwithstanding the fact that it is the ALJ alone who determines whether one is disabled, *see*

20 C.F.R. § 404.1527(e)(1) (1998), there is a plethora of substantial evidence to support the ALJ's decision to discount Dr. Reuben's opinion that Plaintiff is unemployable.

For instance, Dr. David V. Rhodes saw Plaintiff on July 8, 2011, and stated in his notes that Plaintiff' extremities appeared to be normal and that there was no edema or cyanosis. A.R. 387. During Plaintiff's October 12, 2011, visit with Dr. Rhodes, Dr. Rhodes stated that Plaintiff's diabetes and hypertension were "[c]ontrolled," *id*. at 383, "[e]xtremities appear normal. No edema[,] or cyanosis, *id*. at 384. He also indicated that Plaintiff's straight leg raising was positive on the right, *Id*., but failed to indicate whether the straight leg raise testing was positive both sitting and supine.

On October 25, 2011, Plaintiff saw Physician's Assistant Megan E. Fulton and Dr. Raymond Turner in the Neurosurgery Department of the Medical University of South Carolina MUSC). *Id*. at 393-395. Plaintiff's chief complaint was back and right leg pain. *Id*. at 393. There was no weakness or numbness neurologically. *Id*. at 394. There was also no other numbness or paresthesias. *Id*. Except for 4/5 (slightly reduced) strength in his right leg. Plaintiff's sensory and vascular examinations were normal, and his musculoskeletal examination was noted to be within normal limits. *Id*. "Outside imaging from July 2009 and October 2010 . . . was reviewed and noted to reveal lumbar degenerative disc disease at L4-5, and L5-S1, and lumbar disk protrusion and stenosis greater on the right side than the left. The MUSC providers opined that, based on Plaintiff's previous surgery, it was 'reasonable to proceed with a TLIF [transforaminal lumbar interbody fusion] at these [L4-5, 5-1] levels.'" Report 10 (citing to A.R. 393-395).

On March 6, 2012, based on a physical exam, Dr. Rhodes wrote in his notes that, in regards to Plaintiff's back and spine, there was no kyphosis or scoliosis. *Id*. at 409. He also observed that

Plaintiff had a "[n]ormal musculature[,] [n]o skeletal tenderness or joint deformity[,] [and that his] [e]xtremities appear normal [with] [n]o edema or cyanosis." *Id*.

Simply stated, there is more than a "scintilla of evidence" in the record supporting the ALJ's conclusion that Dr. Reuben's opinion is incongruent with and unsupported by other substantial medical evidence in the record. Therefore, the Court will overrule this objection.

Second, Plaintiff contends that the Magistrate Judge failed to acknowledge Plaintiff's argument that the ALJ neglected to consider Dr. Reuben's opinion that Plaintiff's narcotic usage would affect his "ability to sustain work on a regular basis." Plaintiff's Objections 2. The Court disagrees.

There are two problems with this argument: First, the ALJ said in his decision that he had "specifically considered . . . the type, dosage[,] effectiveness, and adverse side effects of any medication." A.R. 13. And second, Dr. Reuben states that Plaintiff's narcotic usage, combined with Plaintiff's alleged "restrictions on standing, walking, sitting, and driving," *Id*. at 380, are what make him unemployable. Dr. Reuben does not state, and Plaintiff has failed to bring to the Court's attention any evidence, that suggests that Plaintiff's use of narcotics alone causes him to be unemployable. Accordingly, the Court will overrule this objection, as well.

Third, Plaintiff maintains that the Magistrate Judge is incorrect in his suggestion "that the ALJ properly considered the Listing and provided evidence that [Plaintiff] did not meet the Listing." Plaintiff's Objections 4. The Court is unpersuaded.

In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A Plaintiff is presumed to be disabled if his or her impairment meets or is medically equivalent to

6

the criteria of an impairment set forth in the Listings. *See* 20 C.F.R. § 416.925.

    Listing § 1.04A is applicable in this case and is concerned with

> [d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A.

    In considering Plaintiff's claim, the ALJ stated that he had

> specifically considered [whether Plaintiffs] musculoskeletal impairments meets Listing 1.04 of the Listing of Impairments; however, there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising test; or spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dyesthesia, resulting in the need for changes in position or posture more than once every two hours; or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in ability to ambulate effectively, as defined in 1.00B2b.

A.R. 12.

    As noted by the Magistrate Judge,

> Plaintiff only had positive straight leg raise testing on one occasion, and even if one positive incident was sufficient to meet that prong of Listing 1.04A, there is no indication that straight leg raise testing was positive both sitting and supine (the treatment note merely provides "+SLR ON RIGHT"). Further, Plaintiff fails to show motor loss

7

> accompanied by sensory or reflex loss, as during the relevant time period there is simply no indication of sensory or reflex loss. Additionally, while Plaintiff appears to argue that he has shown motor loss based on the findings of the October 2011 MUSC examination, although there is a notation that Plaintiff had decreased right leg strength ("Right Leg 4/5"), his sensory findings were normal and there is no indication of any reflex loss.

Report 21-22 (citations omitted).

In Plaintiff's objections, he avers that he met all of the requirements of Listing 1.04A. But, this is simply not so. As already stated, the regulations require that, to meet Listing § 1.04A, "if there is involvement of the lower back, [Plaintiff must provide evidence of] positive straight-leg raising test (sitting and supine)[.]" 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A. As the Magistrate Judge opined, Plaintiff failed to provide any such evidence and that alone is fatal to his claim. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Consequently, the Court will also overrule this objection.

Fourth, Plaintiff asserts that "the Magistrate Judge has misinterpreted Plaintiff's claims that he meets a Listing by showing that there are times when the required elements were present and acknowledging that there were times when the required elements were not present. . . . The Magistrate Judge appears to interpret [Plaintiff's] argument as acknowledg[ ]ment that he did not meet the Listing.  Plaintiff's Objections 4-5.

Inasmuch as the Court has already found that Plaintiff failed to meet Listing § 1.04A, this argument is moot. As such, the Court will overrule this objection, too.

Certainly, the ALJ could have done a better job in explaining the bases for finding that Plaintiff is not disabled under the Act. But, the fact that the ALJ could have offered a more thorough explanation for his decision does not change the Court's conclusion that substantial evidence in the record supports the ALJ's decision. The Court holds that "the ALJ's factual findings . . . are supported by substantial evidence and [were] reached by applying the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, adopts the Report to the extent that it does not contradict this Order, and incorporates it herein. Therefore, it is the judgment of the Court that Defendant's final decision denying Plaintiff's claim for DIB is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed this 27th day of May 2015, in Columbia, South Carolina.

s/ Mary G. Lewis  
MARY G. LEWIS  
UNITED STATES DISTRICT JUDGE